## NORTHCUTT v. LOESCH.
## Patent Appeal No. 2512.

Court of Customs and Patent Appeals.
Dec. 1, 1930.

Mayer, Warfield & Watson, of New York City (Donald L. Brown, of New York City, of counsel), for appellant.

Edward H. Cumpston, of Rochester, N. Y., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

This is an interference declared by the Patent Office between the applications of the appellant, Robert T. Northcutt, serial No. 61,840, filed October 10, 1925, and the appellee, Hugo E. Loesch, serial No. 74,626, filed December 10, 1925. The issue in the interference is contained in six counts, which are as follows:

"1. A new article of manufacture consisting of a concentrated syrup carrying pectin in suspension, but not in solution therein.

"2. A new article of manufacture consisting of a concentrated syrup carrying pectin in suspension, and which, by the addition of water and a further amount of carbohydrate will cause the pectin to go into solution and form a jelled mass.

"3. A new article of manufacture consisting of a concentrated fruit syrup carrying pectin in suspension, but not in solution therein.

"4. As a new article of manufacture, a concentrated fruit syrup carrying sugar and an acid and pectin, the relation between the sugar, the acid and the pectin being such that the pectin introduced is in suspension but not in solution.

"5. The method of forming a concentrated fruit syrup containing pectin in suspension which consists in forming a concentrated fruit syrup, determining the percentage of the carbohydrate carried by the syrup and the percentage of acidity then regulating the amount of the carbohydrate and acidity until a point is reached where the pectin introduced is in suspension, but not in solution.

"6. The method of forming a concentrated fruit syrup carrying pectin in suspension, which consists in first concentrating a fruit to a syrup, then introducing an acid in such amount that the relation between the carbohydrate present and the acid added shall be such that the subsequently added pectin is in suspension, but not in solution."

Testimony was taken by both parties to the record, and thereafter the Acting Examiner of Interferences rendered a carefully prepared decision awarding priority to Loesch on counts 1 and 2 of the interference, and to Northcutt on counts 3, 4, 5, and 6 thereof.

The Acting Examiner based his decision upon his findings that the appellee had shown by his testimony that he had conceived the subject-matter of counts 1 and 2 as early as November, 1922, and that he had reduced the same to practice in the early summer of 1926. He further found that there was no evidence in the record to show that either party had conceived or practiced the invention as shown in counts 3, 4, 5, and 6 of the interference, prior to their respective filing dates, and that therefore Northcutt, being the senior party, was entitled to priority on counts 3, 4, 5, and 6.

This decision was sustained by the Board of Appeals. Both tribunals found that, while Loesch had demonstrated that he had conceived and reduced to practice the invention of a concentrated sirup carrying pectin in suspension but not in solution, as stated in the first and second counts, neither party had shown any conception and reduction to practice, prior to their filing dates, of a concentrated fruit sirup carrying pectin in suspension but not in solution therein.

Northcutt has appealed to this court, and contends that priority should also be awarded to him on the record as to counts 1 and 2. A brief examination of the record testimony is necessary in order to determine whether he is, in fact, entitled to such priority.

Northcutt supported the issues in his behalf by his own testimony and by the testimony of three witnesses. From Northcutt's testimony it appears that he has been working on the extraction of pectin since December, 1907; that in 1916 he made his first experiment with the view of furnishing a commercial article consisting of a crystallizable sugar in solution, with or without fruit sirup in which powdered pectin was suspended but not in solution. During the year 1916 he talked this matter over with the witness, Reilly, but was unable to obtain sugar, and hence did nothing more at it.

In 1925 or 1924 he organized a company known as the Calvin-Thomas Company, together with Mr. Reilly, and soon thereafter they began to market a product known as pectin concentrate, which, he states, had powdered pectin in suspension in water and crystallizable sugar in the presence of an acid. This concentrate, he claims, held the pectin in suspension and not in solution. The company's designation was changed from time to time, and thereafter the services of the Dubelle Grape Company in Silver Creek, N. Y., were utilized and this company made for the appellant and his associates on his formula several hundred cases of a pectin concentrate.

Northcutt states that in November, 1923, his company, the Citrus Fruit Products Company, put out to the public a concentrate known as "Mission Grape." He claims this concentrate was composed of grape juice to which was added sugar, and which had sufficient powdered pectin in suspension to cause the mass to jelly when diluted with three parts of water and heated and combined with a sufficient amount of sugar. The name of the product was afterwards changed to "Minute Maid," which name was registered as a trade-mark.

The witness Julian S. Cohen testified that some time after the 1st of September, 1923, he talked with Northcutt, and was informed by him that Northcutt desired to purchase pectin, but that he wanted it in solution. About November 6, 1923, Northcutt disclosed to the witness, as he states, "that the acidity of the solution was so high and the sugar content so high that it was not possible to get sufficient pectin in solution to get that pectin to make a jelly, and that it was only on dilution that the sugar and the acid were reduced sufficiently to allow the pectin to go into the solution. That was the real basis of their whole invention and, as I thought at that time, they had a patent application on."

He further stated that he sold considerable quantities of raw pectin to Northcutt and Reilly, during his association with them, which pectin was in a powdered form. It also appears from Cohen's testimony that Northcutt and Reilly were engaged in selling grape juice blended in imitation of certain wines, and which was called "fruit concentrate," and which was used for the purpose of making wine. These concentrates, however, according to the witness, had no added pectin.

The witness, John C. Reilly, testifying for Northcutt, stated, in substance, that he had been associated with Northcutt in business for nine years, and in 1916 made a working arrangement with him regarding the development of a soft drink which was thereafter put on the market by them. He states that Northcutt talked to him in 1916 about putting a jelly juice concentrate on the market. This was explained to be concentrated fruit juices combined with pectin. In 1923 they were attempting to interest others in the sale of a jelly juice concentrate, and were inquiring in various localities for pectin in either powdered or liquid form. They also thereafter bought pectin in a powdered form from the witness Cohen.

August H. Du Rocher was also called as a witness by Northcutt. The witness was a salesman, and had acted in that capacity for Northcutt's companies. He states that he had sold "Mission Grape" and "Minute Maid" concentrates, both of which were produced by the applicant's companies, probably to the extent of one hundred cases. The witness further stated that he did not know how the pectin concentrate was made, but knows that he did sell what he denominates as "concentrate for jell," and that it was used for making jelly and for soft drinks.

This is the substance of the testimony produced on the part of the appellant, Northcutt, to show conception and reduction to practice under the counts of the interference.

It will be observed that each and every count of the interference rests upon the suspension of pectin in a concentrated sirup, counts 1 and 2 being indefinite as to the kind of sirup, while counts 3, 4, 5, and 6 are based upon a fruit sirup.

Sirup is defined in Webster's International Dictionary, 1925, as follows:

"Sirup, n. Orig., a thick, viscid liquid made from the juice of fruits, herbs, etc., boiled with sugar; hence, any concentrated, more or less viscid, aqueous solution of sugar, either without admixture, as the simple sirup of pharmacy, or variously flavored or medicated, or obtained in an incompletely refined state, as in the manufacture of cane sugar or of glucose;—applied specif. in cane-sugar manufacture to the concentrated juice before the separation of sugar, and to molasses refined and decolored for table use."

In Cresca Co. v. United States, 15 Cust. App. 105, T. D. 42185, we held a sirup to be a saturated solution of sugar in water, and approved of that definition in Cresca Co. v. United States, 17 Cust. App. 83, T. D. 43376.

There is nothing in the testimony of Northcutt which shows that he had any conception of, or reduced to practice at any time prior to the filing of his application, a sirup either simple or otherwise, containing pectin in suspension. This being true, he is not entitled to any earlier date than his date of filing, on any of the counts.

On the other hand, the appellee, Loesch, proffered his own testimony and that of the witnesses, Charles G. Knight, Lowell H. Cuthbert, Neal M. Beach, William A. Bender, and Fred M. Chesbro. Loesch testified that he is employed by the Douglas-Pectin Corporation, which manufactures a concentrated

solution for making jelly, called "Certo," and that the company has been putting out liquid pectin since 1912 or 1913. He further states that he conceived the invention in question here about November, 1921, and that he began experiments during that year, having in mind marketing pectin not only in a concentrated liquid form, but also in a dry, powdered form, and during these experiments discovered that powdered pectin could be carried in suspension in a concentrated sugar sirup, and at that time called the attention of Robert Douglas and the witness Bender to this, and to the further fact that pectin so carried in suspension would not be dissolved in the sirup.

On November 17, 1922, he made a preparation of powdered pectin suspended in gylcerine, and made a laboratory record of it, which was produced in evidence. It appears that this witness was particularly careful in making records of his experiments, and the same were carefully preserved and were in evidence, showing every step of the processes and furnishing ample corroboration of his testimony.

Following this experiment, from time to time the appellee performed various other experiments with pectin in suspension, and, in order to test these products, made jellies, the results of which were carefully recorded in so-called jelly books. In March, 1923, the witness states he made a suspension of pectin in glycerine and also in a 65 per cent. sugar sirup and in alcohol. These materials were tested, and the results of the tests were in evidence. On December 27, 1923, he prepared and tested a 60 per cent. sugar sirup containing a suspension of pectin. All these tests were made known to others at or near the times of the tests. In the spring of 1925, the witness prepared a product consisting of a powdered pectin in suspension in an acid sirup, and disclosed it to his associate, Mr. Knight, who used some of the material in home tests, making a good quality of jelly out of the same.

The appellee was corroborated by several witnesses. Charles G. Knight testified that in March, 1925, on his coming into the company in which the appellee was employed, the appellee explained to him fully his product, comprising powdered pectin in suspension but not in solution, in a concentrated sirup or sugar solution with or without acid, and, at the same time, showed him samples of this product. In the summer of 1925, appellee's company concluded to put the product on the market commercially, and took up with manufacturers the question of proper containers for the product. On November 3, 1925, a conference was had with the Jell-O company as to the best sources of pure fruit flavors and colors, and, on December 10, 1925, the appellee's application was filed in the Patent Office.

The witness Cuthbert has been employed by the appellee's company since 1913, and since appellee's association therewith in 1919 has been in daily contact with the appellee and his work. He testifies that in 1921 the appellee explained to him a product consisting of a mixture of powdered pectin suspended, but undissolved, in a liquid such as a concentrated sirup. From July 29, 1922, to August 15, 1924, he helped to judge jellies prepared by the appellee in carrying on his said experiments. The results of these tests were recorded in books which are in evidence. It fully appears that the appellee fully disclosed to this witness the invention in question.

Without further quoting the testimony of the witnesses, it is sufficient to say that an examination of the testimony of the witnesses Beach, Bender, and Chesbro corroborates the testimony of the appellee, and shows that the appellee not only conceived the invention in question, but reduced it to practice, as stated by him in his testimony, which reduction to practice was prior to the date of filing of the appellant.

From a careful reading of the record we are convinced that the appellee has shown conception and reduction to practice of the invention the subject of counts 1 and 2 of the interference, prior to the date of filing of appellant, and is therefore entitled to priority therein, as found by both tribunals in the Patent Office.

The decision of the Board of Appeals is affirmed.

Affirmed.